

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-10-2002

# In Re: Grand Jury

Precedential or Non-Precedential:

Docket 1-2883

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"In Re: Grand Jury" (2002). *2002 Decisions.* Paper 10.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/10

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 10, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 01-2883

IMPOUNDED

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Miscellaneous No. 00-mc-00265)
District Judge: Honorable John C. Lifland

Argued November 9, 2001

BEFORE: McKEE, RENDELL and STAPLETON,
Circuit Judges

(Opinion Filed: January 10, 2002)

        Lawrence S. Goldman (Argued)
        Law Offices of Lawrence S. Goldman
        500 Fifth Avenue
        29th Floor
        New York, NY 10110

         Attorney for Appellant
        John Doe 1

        Elizabeth S. Ferguson (Argued)
        Office of United States Attorney
        970 Broad Street
        Room 700
        Newark, NJ 07102

         Attorney for Appellee
        United States of America

OPINION OF THE COURT

STAPLETON, Circuit Judge:

We are here asked to decide whether an Assistant United States Attorney ("AUSA") may, without court approval, disclose grand jury information to an AUSA in another district for use in the performance of his duty to enforce federal criminal law. We must also determine whether the appellant, an attorney, is entitled to redact documents that he must produce to the grand jury so as to preserve the anonymity of his clients.

I.

The United States Attorney for the District of New Jersey has been conducting a grand jury investigation, and appellant has become a subject of that investigation. According to the government, this investigation is not limited to the District of New Jersey and has required the coordinated effort and interaction of several United States Attorneys and their assistants in other districts.

Appellant undertook representation of a client in federal criminal proceedings pending in another district. The United States Attorney's office in New Jersey, in the course of its grand jury investigation, received information about appellant which it reasonably believed revealed a conflict of interest between appellant and his/her client. In two letters, both of which appear to follow up on separate telephone conversations, an AUSA from New Jersey revealed this information to the AUSA having responsibility for the prosecution against the client in the other district. The AUSA receiving this information then filed a motion to have appellant disqualified from representing the client on the basis that the grand jury investigation and the information it revealed demonstrated a conflict of interest. The motion was denied and appellant represented the client at trial and continues to represent the client on appeal.

After the client's conviction, a New Jersey grand jury issued a subpoena duces tecum to appellant's accountants.

2

The subpoena requested documents relating to appellant,
the law firm in which he/she is a partner, and any entity
to which he/she is related. Among the documents
requested were copies of the firm's billing statements
reflecting the names and accounts of many of appellant's
clients. Appellant's accountants produced a substantial
majority of these documents, but withheld the remainder of
the documents, each of which contains names of the
appellant's former or current clients. The government
asserts that the withheld documents are needed to explain
those documents that were produced and to give the
government an accurate picture of appellant's finances.[1]

Appellant moved in New Jersey for (1) a protective order
preventing an AUSA in New Jersey from further disclosing
grand jury information to an AUSA in any district other
than New Jersey without first obtaining a court order, and
(2) an order modifying the subpoena to permit the redaction
of the names of appellant's clients. The District Court
denied both forms of relief.

II.

The government raises a threshold issue of jurisdiction.
Appellant's notice of appeal was filed 53 days after the
District Court's order denying appellant's motions was
entered and the government contends that this was
untimely under Federal Rule of Appellate Procedure 4(b).
Rule 4(b) provides that "[i]n a criminal case, a defendant's
notice of appeal must be filed in the district court within 10
days . . . of . . . the entry of either the judgment or the
order appealed. . . ." Fed.R.App.P. 4(b)(1)(A)(i). Appellant, on
the other hand, insists that his/her application for relief
was a civil case, and, under Rule 4(a)(1)(B), he/she had 60
days from the entry of the District Court's order to file a
notice of appeal.[2]

_____

1. At this time, pursuant to an agreement between the AUSA in New
Jersey and appellant's accountants, all of the documents that were
previously withheld have been produced with the names of the
appellant's clients redacted pending the resolution of this appeal.
2. Rule 4(a)(1)(B) provides that "in a civil case . . . [w]hen the United
States or its officer or agency is a party, the notice of appeal may be
filed
by any party within 60 days after the judgment or order appealed from
is entered." Fed.R.App.P. 4(a)(1)(B).

3

We agree with appellant that his/her application to the District Court was a "civil case" within the meaning of Rule 4. Accordingly, we conclude that we have jurisdiction over this appeal.3

We spoke directly to this jurisdictional issue in United States v. Lavin, 942 F.2d 177 (3d Cir. 1991) where we held that the proceedings on a motion under 21 U.S.C.S 853(n) to modify a forfeiture order entered as a part of a criminal sentence constituted a "civil case" for purposes of Rule 4. We explained:

> The term "criminal case" in Rule 4(b) generally is construed narrowly to encompass only a "prosecution brought by the government to secure a sentence of conviction for criminal conduct." Conversely, the term "civil case" in Rule 4(a)(1) generally is construed broadly to include "any action that is not a criminal prosecution." As a result, proceedings that essentially are civil in nature are deemed to be "civil cases," even though they derive from a prior criminal prosecution.
>
> * * *
>
> Applying these principles to the case at bar, we are convinced that a proceeding under 21 U.S.C. S 853(h) . . . is a "civil case" for purposes of Rule 4(a)(1). As the government concedes, a hearing to adjudicate the validity of a third party's interest in forfeited property is not a criminal prosecution, i.e., an action commenced by the government to secure a sentence of conviction for criminal conduct.

Id. at 181-82 (internal citations omitted) (emphasis in original). Our reading of Rule 4 in Lavin is, of course,

_____

3. Normally, an order declining to quash or narrow a subpoena is not a final appealable order absent disobedience and a contempt citation. However, "when a party, other than the one to whom a subpoena has been addressed, moves to quash the subpoena, the denial of his motion disposes of his claims fully and finally," it being unreasonable to expect that a third party will risk contempt in order to facilitate immediate review. In re Grand Jury, 619 F.2d 1022, 1025 (3d Cir. 1980). Accordingly, the order currently before us is final for purposes of appellate review.

consistent with the fact that Rule 4(b), dealing with "criminal cases" speaks only of appeals by"defendants." See also Lee v. Johnson, 799 F.2d 31, 36-37 (3d Cir. 1986) (For purposes of the Equal Access to Justice Act, it is the purpose of the proceeding that determines whether it is civil or criminal. Thus, "a contempt proceeding aimed at coercing compliance with a grand jury proceeding is civil in nature . . . . A contempt proceeding aimed not at coercing compliance but at punishing a condemnor for past defiance of the process of the court is criminal in nature.").

While it is true that we have characterized grand jury proceedings as criminal in nature, See, e.g., In re Grand Jury Empanelled February 14, 1978, 597 F.2d 851 (3d Cir. 1979), this is not determinative under our reading of Rule 4 in Lavin. While appellant's motion was made in the context of a grand jury proceeding, just as the motion in Lavin was made in the context of a criminal action, proceedings on that motion were clearly not proceedings by the government to secure a sentence of conviction for criminal conduct. Accordingly, those proceedings were "civil" for purposes of Rule 4.4

III.

The government also objects to our entertaining this appeal on the ground that appellant lacks standing to seek either an injunction against further inter-district disclosures of grand jury materials without a court order or modification of the subpoena. We disagree.

Appellant is a subject of the grand jury investigation and the allegedly unauthorized disclosures consist of information about him/her obtained in the course of that investigation. Among the interests protected by grand jury

_____

4. In holding, as we do, that a motion to modify a subpoena is a civil case within the meaning of Rule 4, we take a different view than two of our sister circuits that have passed on the issue. See In re Grand Jury Subpoenas 89-3 and 89-4, 902 F.2d 244, 247 (4th Cir. 1990); In re Grand Jury Proceedings (Company X), 835 F.2d 237 (10th Cir. 1987) (per curiam). But see In Re Grand Jury Proceedings (Manges), 745 F.2d 1250, 1251 (9th Cir. 1984) (holding that appeals from orders concerning grand jury subpoenas are civil actions governed by Fed.R.App.P. 4(a)).

5

secrecy is the privacy interest of an investigation's subjects. Douglas Oil Co. of Cal. v. Petrol Stops Northwest, 441 U.S. 211, 218 n. 8 (1979). If one in appellant's position does not have standing to complain about unauthorized disclosures, we fail to perceive how it would ever be possible to enforce the rule of grand jury secrecy.

Standing to seek a modification of the subpoena presents a different issue, but our conclusion must be the same. Although the documents that are the subject of appellant's motion for modification of the subpoena are in the hands of appellant's accountants, they nevertheless belong to appellant's firm. We have previously held that one who has a property interest in the subject matter of a grand jury subpoena has standing to challenge the subpoena and we so hold here. See In re Grand Jury, 619 F.2d 1022, 1026 (3d Cir. 1980). This does not, of course, mean that appellant's property interest will not have to yield to the grand jury's interest in reviewing the documents, but that is a merits issue. See id. Appellant has standing to attempt to narrow the subpoena as well as to seek protection against further inter-district disclosures. Accordingly, we now turn to the merits.

IV.

Federal Rule of Criminal Procedure 6(e)(2) provides the general rule with respect to grand jury secrecy:

> (2) General Rule of Secrecy. A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. . . . A knowing violation of Rule 6 may be punished as a contempt of court.

Subsection (e)(3) provides exceptions to the general rule of non-disclosure:

> (3) Exceptions.
>
> (A) Disclosure . . . may be made to --

6

        (i) an attorney for the government for use  in the
    performance of such attorney's duty; and

        (ii) such government personnel (including
    personnel of a state or subdivision of a state) as are
    deemed necessary by an attorney for the government
    to assist an attorney for the government in the
    performance of such attorney's duty to enforce
    federal criminal law.

Subsection (e)(3)(C) provides four additional exceptions,
three of which involve court approval and are not relevant
here. The fourth is significant in the current context:

        (C) Disclosure . . . may also be made --

        (iii) when the disclosure is made by an attorney for
    the government to another federal grand jury.

An "attorney for the government" for the purposes of Rule
6 includes "the Attorney General, an authorized assistant of
the Attorney General, a United States Attorney,[and] an
authorized assistant of a United States Attorney."
Fed.R.Crim.P. 54(c).

In United States v. Sells Engineering, Inc., 463 U.S. 418
(1983), the Supreme Court held that Rule 6(e)(3)(A)(i) does
not authorize disclosure without court approval to an
attorney for the government for use in a civil proceeding.
See id. at 442. In the course of so holding, the Court
reviewed the history of Rule 6 and the practice under
subsection (A)(i). Subsection (A)(i) was originally enacted in
1944; subsection (A)(ii) was added in 1977. Despite the
disparity in the text of subsections (A)(i) and (A)(ii), the
Court concluded that the purposes for which disclosure
may be made to a government attorney and to other
government personnel are the same. The Court found that
when Congress, in 1977, inserted the clause "duty to
enforce federal criminal law," in subsection (A)(ii), "it was
merely making explicit what it believed to be already
implicit in the existing (A)(i) language." Id. at 436. Thus, it
is clear that the authority granted by subsection (A)(i) is
authority for disclosure to "an attorney for the government
for use in the performance of such attorney's duty to
enforce federal criminal law."

7

Appellant urges us to find implicit in subsection (A)(i) a limitation restricting disclosures by one AUSA to another for use in the performance of the latter's criminal law enforcement duties to intra-district communications. We decline to do so. Rather, we will follow the Supreme Court's advice in United States v. John Doe Inc. 1, 481 U.S. 102, 109 (1987) and "accept . . . Rule [6] as meaning what it says." The text of subsection (A)(i) authorizes an AUSA to disclose grand jury material to another AUSA "for use in the performance of such attorney's [criminal] duties" without regard to his or her location. There is no dispute here that the disclosure to the receiving AUSA was for use in the performance of his/her criminal law enforcement duties, and we, accordingly, can find no fault with the conduct of the government in this matter.

The only argument appellant can mount in the face of the plain meaning of subsection (A)(i) is based on the manner in which the Supreme Court summarized its holding in Sells Engineering and a comment in a footnote in the Court's opinion there. The Court summarized its holding as follows: "We hold that (A)(i) disclosure is limited to use by those attorneys who conduct the criminal matters to which the materials pertain." Sells Eng'g, 463 U.S. at 427. Footnote 11 observes that the legislative history shows "fairly clearly that the reason why it was thought desirable to allow disclosure to other prosecutors was to facilitate effective working of the prosecution team." Id. at 429 n.11. (emphasis in original). Appellant concludes from these portions of Sells Engineering that (A)(i) disclosures are limited to members of the "team" prosecuting the particular matter that produced the grand jury information that was disclosed.

We take a different view of the segments of Sells Engineering that appellant emphasizes. First, the purpose of both was to distinguish between use by the receiving attorney for criminal law enforcement purposes and use by him in civil proceedings. The issue of whether the (A)(i) authorization is limited to some subset of disclosures to government attorneys for use in criminal law enforcement was not before the court, and, in context, it is clear that neither of these statements was intended to express a view on that subject.

8

Moreover, we believe appellant's reading of these portions of Sells Engineering is unduly restrictive. Disclosures among prosecutors working on the same prosecution is, of course, the paradigm situation in which securing court approval would be prohibitively burdensome, and the drafters did, indeed, intend "to facilitate the effective working of [such a] prosecution team." See id. However, this does not mean the Supreme Court's reference to the legislative history was intended to limit the (A)(i) authorization to such a narrow range of disclosures. On the contrary, the Court's summary of its holding is not limited to disclosures between attorneys working on the same matter. Rather, it speaks of "matters" and authorizes disclosures to all "attorneys who conduct the criminal matters to which the materials pertain." Id. at 427 (emphasis supplied). This would seem to us to include any government attorneys conducting other criminal matters to which the materials disclosed are relevant. Thus, when carefully parsed, we find the Court's summary entirely consistent with the authority granted by a straight forward reading of the text -- the authority to disclose to any attorney for the government for use in the performance of his duty to enforce federal criminal law.

Finally, we note that nothing in the Sells Engineering opinion supports the notion that subsection (A)(i) contains a geographic limitation. To the contrary, all members of the Court seemed in agreement, for example, that disclosures to supervisors at Main Justice in the District of Columbia were authorized by subsection (A)(i).

We also conclude that recognizing appellant's geographic limitation on the authority granted by subsection (A)(i) would be difficult to reconcile with the absence of any similar limitation in subsection (C)(iii). As we have noted, subsection (C)(iii), which was added to Rule 6(e) in 1983, provides explicit authorization for a disclosure"by an attorney for the government [without court approval] to another federal grand jury." Fed.R.Crim.P. 6(e)(3)(C)(iii). This express authority contains no geographic limitation; on its face it authorizes disclosures to grand juries in other districts as well as successive grand juries in the same district.

9

The Advisory Committee's Note indicates that absence of such a geographic limitation was deliberate. The rationale behind the authority conveyed, as described in the Note, was that the "[s]ecrecy of grand jury materials should be protected almost as well by the safeguards at the second grand jury proceedings, including the oath of jurors, as by judicial supervision of the disclosure of such materials." Fed.R.Crim.P. 6(e)(3)(C)(iii) Advisory Committee Notes, 1983 amendments (quoting United States v. Malatesta , 583 F.2d 748 (5th Cir. 1978)). In addition to thus identifying a rationale applicable to inter-district disclosures to a grand jury as well as to intra-district ones, the Advisory Note also indicates that subsection (C)(iii) was consistent with the few prior cases that had considered the propriety of disclosures to other grand juries in the absence of authority in the rules. Prominent among the cases reflecting that "preexisting practice" was the decision of the Fourth Circuit Court of Appeals in United States v. Penrod, 609 F.2d 1092 (4th Cir. 1979) which approved a disclosure of information secured by a grand jury in the Eastern District of Virginia to a grand jury sitting in the District of Columbia.

Subsection (C)(iii) thus reflects a Congressional desire to expedite and facilitate the use of one grand jury's information by other grand juries investigating other crimes. We can perceive no reason why Congress would have endorsed this inter-district use of grand jury information without a court order while requiring a court order for the inter-district disclosure of grand jury information to the same AUSA who would be assisting the receiving grand jury. In short, we are confident that Congress, in 1983, viewed the preexisting subsection (A)(i) and the new (C)(iii) to be complementary because it understood that (A)(i), in accordance with its text, already contained authority for inter-district disclosures without a court order to government attorneys for use in criminal law enforcement.

Federal crimes often involve inter-district activities and, as a result, grand jury investigations conducted by United States Attorneys often involve more than one district. Moreover, while investigations in different districts may initially appear unrelated, investigators frequently uncover

10

information showing them to be closely linked. Accordingly, cooperation between United States Attorney's offices is essential to the effective enforcement of federal criminal laws. In fast moving investigations, delays in that cooperation can exact a heavy toll. Congress apparently determined that inter-district disclosures between AUSAs in support of their criminal law enforcement responsibilities, but without court supervision, could materially increase the efficiency of criminal law enforcement efforts without jeopardizing the interests that grand jury secrecy seeks to protect. Those interests, as identified by the Supreme Court, include: (1) preserving the willingness and candor of witnesses called before the grand jury; (2) maintaining the integrity of the investigations so that targets will not be afforded an opportunity to flee or interfere with the grand jury; and (3) preserving the rights of a suspect who might later be exonerated. See Douglas Oil Co., 441 U.S. at 218-19. None of these interests are likely to be compromised by the transmission of grand jury material without a court order from one AUSA to another in furtherance of their criminal law enforcement duties, regardless of the district in which the receiving AUSA practices. Rule 6(e)(2) requires that all AUSAs, regardless of the district in which they serve, maintain the secrecy of grand jury information. Thus, as in the case of subsection (C)(iii) disclosures to the members of a second grand jury, the recipient of a disclosure pursuant to subsection (A)(i) will be subject to the same duties of secrecy that bound the attorney making the disclosure.

V.

Rule 17(c) provides that a "court on motion made promptly may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." The burden of production and the burden of persuasion to show that a subpoena was unreasonable lies with the party resisting it. United States v. R. Enterprises, Inc., 498 U.S. 292, 301 (1991). We review a District Court's decision under Rule 17(c) for an abuse of discretion only. See United States v. Berrigan, 482 F.2d 171, 181 (3d Cir. 1973).

11

We agree with appellant that a "district court may, under Fed.R.Crim.P. 17(c), quash or modify a subpoena duces tecum independent of a finding of privilege where the subpoena is unreasonable." Appellant's Br. p. 26. Appellant has failed to show, however, that the subpoena in its present form is unreasonable, oppressive, or improper in any other way. Contrary to the appellant's assertion, there has been no "showing of irregularity" that would shift to the government the burden of demonstrating the subpoena's reasonableness. See In re Grand Jury Proceedings (Johanson), 632 F.2d 1033, 1041-42 (3d Cir. 1980). Accordingly, we find no abuse of discretion.

VI.

The District Court's Order of May 17, 2001, will be affirmed.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

12