PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-2788

_____

UNITED STATES OF AMERICA

v.

M. M.,
                    Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Judge:  Honorable Matthew W. Brann

_____

Argued June 22, 2021
Before:  SMITH, *Chief Judge*,[*] MATEY and FISHER,
*Circuit Judges*.

(Filed: December 2, 2021)

_____

[*] Judge Smith was Chief Judge at the time this appeal was argued. Judge Smith completed his term as Chief Judge and assumed senior status on December 4, 2021.

Quin M. Sorenson     **ARGUED**
Frederick W. Ulrich
Office of Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
        *Counsel for Appellant*

Michelle L. Olshefski     **ARGUED**
Bruce D. Brandler
Acting United States Attorney
Office of United States Attorney
235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503

_____

OPINION OF THE COURT

_____


FISHER, *Circuit Judge*.

We generally "look with disfavor upon changes to a judgment after the fact." *United States v. Bennett*, 423 F.3d 271, 276 (3d Cir. 2005). Appellant M. M. pleaded guilty to one count of unlawful distribution of fentanyl resulting in death, a crime that carries a statutory mandatory minimum sentence. 21 U.S.C. § 841(b)(1)(C). The District Court sentenced him to 120 months' imprisonment and then, in response to the Government's motion under Federal Rule of Criminal Procedure 35(a), amended the sentence to 180 months. M.M.

appeals, arguing the District Court improperly applied Rule 35(a). We agree. Because we hold the authority to amend a sentence under Rule 35(a) to be very narrow and conclude there was no clear error in the original sentence, we will vacate the revised sentence and remand.

I.

A. Factual History

In 2017, a man was found dead on the bathroom floor of his grandparents' house. Next to his body were his cell phone and twenty-two small wax bags containing fentanyl-laced heroin, stamped "WI FIGHT?" J.A. 66. An autopsy report later showed that the victim overdosed on fentanyl and heroin.

After further investigation, police officers determined that M.M. was the victim's drug dealer. A search of the victim's phone revealed an exchange of text messages between the victim and M.M. from the day before the overdose about a delivery of "one to two bundles" or "ten to twenty bags of heroin" to the victim from M.M. *Id.* Additionally, the victim told his grandfather, who confronted him about his drug abuse a few days prior to the overdose, that he was getting the drugs from M.M. Lastly, in 2017, police officers arrested M.M. and found in his possession fifteen drug bags that were identical to the ones found next to the victim's dead body, each stamped with "WI FIGHT?" *Id.*

B. Procedural History

A grand jury indicted M.M. on one count of intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1), and one count of distribution of a controlled substance resulting in death, *id.* § 841(b)(1)(C). He pleaded not guilty.

2

A few months later, M.M. agreed to cooperate and entered into a plea agreement with the Government. In return, the Government, pursuant to 18 U.S.C. § 3553(e), agreed to recommend a departure below the applicable mandatory minimum sentence of 240 months if M.M. provided "substantial assistance" in the Government's investigation of others. M.M. then pleaded guilty to distribution of a controlled substance resulting in death.

Based on its agreement with M.M., the Government moved for a downward departure of 24 months from the mandatory minimum, asking for a 216-month term. At a closed hearing prior to sentencing, the District Court granted the downward departure motion after evaluating factors related to M.M.'s cooperation with the Government. The District Court did not specify the extent of the departure.

Later the same day, at an open sentencing hearing, M.M. argued for a term below the adjusted departure proposed by the Government. He invoked § 3553(a) factors, including his addiction and psychological issues related to his upbringing. He also suggested the Government's recommended sentence was greater than necessary. The District Court noted its obligation to impose an individualized sentence, and it discussed § 3553(a) factors such as M.M.'s drug and alcohol dependence, his mental and emotional condition, and the quantity of drugs involved in the distribution resulting in the victim's death. It then stated it would "vary below the guideline range due to a holistic consideration" of these factors, but it did not mention M.M.'s cooperation or the mandatory minimum. J.A. 67. The District Court then sentenced M.M. to a term of 120 months.

Eleven days after the sentencing, the Government filed a motion to correct the sentence pursuant to Rule 35(a), arguing

3

that § 3553(e) does not allow the District Court to reduce a sentence below a statutory mandatory minimum based on considerations unrelated to the defendant's substantial assistance to law enforcement authorities. The District Court agreed that clear error had occurred and that it improperly considered the § 3553(a) factors by reducing the sentence further than M.M.'s substantial assistance warranted. It clarified that M.M.'s substantial assistance entitled him to a departure to 180 months' imprisonment, not 120. The District Court stated that reducing M.M.'s sentence any further would violate our holding in *United States v. Winebarger*, 664 F.3d 388 (3d Cir. 2011).

M.M. timely appealed.

II.[1]

---

[1] The District Court had jurisdiction over M.M.'s offenses against the laws of the United States. 18 U.S.C. § 3231. This Court has jurisdiction over the District Court's final judgment. 28 U.S.C. § 1291; 18 U.S.C. § 3742.

M.M. contends the District Court erred by granting the Government's Rule 35(a) motion to amend his sentence. He argues there was no clear error at the original sentencing that would justify amendment. "The legal question of whether the District Court had the authority to amend its sentence is subject to plenary review." *United States v. Bennett*, 423 F.3d 271, 274 (3d Cir. 2005).

## A. Sentence Correction Under Rule 35(a)

Generally, a district court "may not modify a term of imprisonment once it has been imposed." *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). "The principle of finality underlies the rule that a court may not substantively alter a judgment." *United States v. DeLeo*, 644 F.2d 300, 301 (3d Cir. 1981) (per curiam). That is why "we look with disfavor upon changes to a judgment after the fact." *Bennett*, 423 F.3d at 276. However, a district court may amend a sentence in certain limited circumstances. *See* 18 U.S.C. § 3582(c). One circumstance is under Federal Rule of Criminal Procedure 35(a), which provides that "[w]ithin 14 days after sentencing, [a] court may correct a sentence that resulted from arithmetical, technical, or other clear error."

There is no issue as to whether the District Court committed "arithmetical" or "technical" error by using factors unrelated to M.M.'s substantial assistance to reduce the sentence below the mandatory minimum. Neither party argues that it did. Rather, the parties dispute whether the District Court committed "other clear error" in imposing M.M.'s original sentence. We conclude it did not. Rule 35(a) offers an exceedingly narrow basis to correct a sentence. Although the District Court may have erred in applying the factors of 18 U.S.C. § 3553(a) to M.M.'s sentence, this error was not clear.

5

## B. Other Clear Error Is an Exceedingly Narrow Basis to Amend a Sentence

To answer the question of what can be considered "other clear error" within the meaning of Rule 35(a), "we begin, as with any interpretive exercise, with the text of the rule." *Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 225 (3d Cir. 2012) (interpreting Federal Rules of Civil Procedure). This approach holds true for the Federal Rules of Criminal Procedure. *See Impounded*, 277 F.3d 407, 413 (3d Cir. 2002) (accepting Federal Rule of Criminal Procedure 6(e)(3)(A)(i) as "meaning what it says" (quoting *United States v. John Doe, Inc. I*, 481 U.S. 102, 109 (1987))); *accord United States v. Owen*, 500 F.3d 83, 89 (2d Cir. 2007).

In its entirety, Rule 35(a) reads: "Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." The Rule does not define "other clear error." The Advisory Committee's notes, although "not authoritative," offer "insights into the proper interpretation of a Rule's text." *Black v. United States*, 561 U.S. 465, 475 (2010) (Scalia, J., concurring); *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 557 (2010) (Scalia, J., concurring). Here, they explain that clear error would "extend only to those cases in which an obvious error or mistake has occurred in the sentence" that "would almost certainly result in a remand of the case to the trial court." Fed. R. Crim. P. 35 advisory committee's note to 1991 amendments. The Rule is "intended to be very narrow" and "is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence." *Id.*; *see also United States v. Arroyo*, 434 F.3d 835, 838 (6th Cir. 2006) ("The authority conferred by Rule 35(a) to a district court is extremely limited."). Moreover, the

Committee "explicitly cautions that [Rule 35(a)] was not intended to be used as a method for reopening issues already decided, or to address questions related to the district court's discretion" during sentencing. *United States v. Higgs*, 504 F.3d 456, 462 (3d Cir. 2007).

The notes further describe the Rule as codifying the holdings of two courts of appeals decisions: *United States v. Cook*, 890 F.2d 672 (4th Cir. 1989), and *United States v. Rico*, 902 F.2d 1065 (2d Cir. 1990). Fed. R. Crim. P. 35 advisory committee's note to 1991 amendments. In *Cook*, the Fourth Circuit dealt with a patently illegal sentence; a district court had *sua sponte* corrected a sentence that was not authorized by the then-mandatory sentencing guidelines. 890 F.2d at 674–75. And in *Rico*, the Second Circuit affirmed the district court's correction of a sentence that mistakenly deviated from the court-accepted plea agreement. 902 F.2d at 1066–68. The sentence was illegal because it effectively rejected the agreement *sub silentio*. *See id.* at 1066.

While the notes reveal that Rule 35(a) is meant to be narrow, neither the notes nor the Rule's own language clarify its exact contours. Just how "clear" must error be to permit correction? We agree with the Fifth Circuit that "[i]t is not entirely clear whether a district court [is] authorized to withdraw *any* sentence that would have been vacated and remanded on appeal or only a narrower subset of such sentences and, if the latter, what criteria [are] to be used to determine the boundaries." *United States v. Ross*, 557 F.3d 237, 240 (5th Cir. 2009).

When meaning is not clear from plain text, as with Rule 35(a), *ejusdem generis*, a canon of statutory construction, serves as "a useful tool." *Defoe v. Phillip*, 702 F.3d 735, 748 (3d Cir. 2012) (quoting *Waterfront Comm'n of N.Y. Harbor v.*

7

*Elizabeth–Newark Shipping, Inc.*, 164 F.3d 177, 184 (3d Cir. 1998)). Under *ejusdem generis*, "when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration." *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 129 (1991). Following this interpretation, "other clear error" in Rule 35(a) can be read in connection with the two previous terms in the list: "arithmetical" and "technical." *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1625 (2018) (explaining that when "a more general term follows more specific terms in a list, the general term is usually understood to embrace only [terms] similar in nature to those [terms] enumerated by the preceding specific words" (internal quotation marks omitted)). Thus, clear error must be akin to an arithmetical or a technical error. Consistent with this conclusion, in *Bennett*, we assumed the district court's failure to include an order of forfeiture in its sentence, which "was in effect a clerical error," was "other clear error" under Rule 35(a). 423 F.3d at 273, 277. We also described Rule 35(a) as a "simpler method" to modify such error than Rule 36 of the Federal Rules of Criminal Procedure, which allows for the correction of clerical error in a judgment. *Id*. at 277.

Further, we find persuasive Chief Justice Roberts's exposition of Rule 35 in his dissent in *Dolan v. United States*, 560 U.S. 605 (2010). There, he noted that a sentence, once imposed, "is final and the trial judge's authority to modify it is narrowly circumscribed." *Id.* at 622 (Roberts, C.J., dissenting, joined by JJ. Stevens, Scalia, and Kennedy). He also highlighted that Congress significantly constricted the scope of Rule 35 such that "[t]oday an error may be corrected by the trial court only if it is 'clear,' and only within 14 days after the sentence is announced." *Id.* at 623. As examples of clear errors subject to correction under Rule 35(a), the Chief Justice cited

8

the failure to impose a mandatory term of imprisonment, a mandatory fine, or a mandatory order of restitution. *Id.* Such errors—like arithmetical and technical errors—are easily identifiable and readily ascertained from the sentencing proceeding and judgment. These errors also produce illegal sentences outside of a court's discretion. In sum, Rule 35(a) offers an extremely limited basis on which to correct a sentence.

## C. The District Court Did Not Clearly Err in Discussing the § 3553(a) Factors

Reviewing the record, we are not convinced the District Court committed error, much less "clear error" at sentencing. At the outset, we note that M.M. pleaded guilty to an offense with a mandatory minimum sentence. "When Congress establishes a minimum sentence for a particular crime, district courts are required to sentence defendants guilty of that crime to a term of imprisonment no less than the Congressionally prescribed minimum, unless an explicit exception to the minimum sentence applies." *Winebarger*, 664 F.3d at 392. Section 3553(e) is such an exception. *Id.*; *see also United States v. Kellum*, 356 F.3d 285, 289 (3d Cir. 2004) (describing § 3553(e), relating to substantial assistance, and (f), relating to "safety valve" factors, as the "only" two exceptions to a mandatory minimum sentence). Specifically, § 3553(e) provides that "[u]pon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence *so as to reflect* a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C. § 3553(e) (emphasis added).

Additionally, a sentence reduced below the mandatory minimum under § 3553(e) "shall be imposed in accordance

9

with the guidelines," including § 5K1.1 of the United States Sentencing Guidelines. *Id.* Similar to § 3553(e), § 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance . . . , the court may depart from the guidelines." U.S.S.G. § 5K1.1. It lists some factors that a court may consider, but is "not limited to": (1) the "usefulness of the defendant's assistance"; (2) "the truthfulness, completeness, and reliability of [the provided] information"; (3) "the nature and extent of the . . . assistance"; (4) "any injury . . . or any danger . . . to the defendant or his family" caused by the cooperation; and (5) "the timeliness of the . . . assistance." *Id*. Though this list is non-exhaustive, the factors all center around the "substantial assistance" that a defendant provides to the government's investigation or prosecution, and any other factors the court decides to apply "must bear some relationship to the defendant's assistance" as well. *Winebarger*, 664 F.3d at 394.

Relying on *Winebarger*, the Government contends the District Court incorrectly reduced M.M.'s sentence below the mandatory minimum based in part on the § 3553(a) factors. M.M., on the other hand, argues there was no error in the original sentence that would justify amendment. He contends the District Court was free, at the initial sentencing, to reduce his sentence below the mandatory minimum based on factors related to substantial assistance as authorized by § 3553(e), and then to reduce it further "as a matter of its discretion, applying the sentencing factors and objectives of 18 U.S.C. § 3553(a)." Appellant's Br. 10.

When departing below a mandatory minimum for substantial assistance, § 3553(a) factors cannot be used to further reduce a sentence. *See Winebarger*, 664 F.3d at 389. "If a district court imposes a sentence below the statutory minimum in part so as to reflect the history and characteristics

10

of the defendant, [as provided in 18 U.S.C. § 3553(a)(1),] then the court exceeds the limited authority granted by § 3553(e)." *Id.* at 393 (quoting *United States v. Williams*, 474 F.3d 1130, 1132 (8th Cir. 2007)). M.M.'s argument is one we have already considered and rejected. "According to this argument, once a district court approves a § 3553(e) motion, it should employ the same sentencing methodology it would use if the defendant had never been subject to a mandatory minimum sentence—considering the sentencing guidelines and the full panoply of factors that can influence a sentence thereunder." *Winebarger*, 664 F.3d at 396; *cf.* Appellant's Br. 13 (making the same argument). As we concluded then, so we must conclude now: "We cannot accept this reasoning." *Winebarger*, 664 F.3d at 396.

However, as we held in *United States v. Casiano*, a court may properly consider § 3553(a) factors to limit the extent of a downward departure for substantial assistance. 113 F.3d 420, 431 (3d Cir. 1997). There, the district court granted only a small departure from the then-mandatory sentencing guidelines because of the seriousness of the crime and the impact on the victim. *Id.* at 428. In upholding the district court, we acknowledged the holdings of other circuits forbidding the use of factors unrelated to a defendant's cooperation to extend a departure for substantial assistance. *Id.* at 429 (collecting cases). But we noted that despite "the facial appeal of symmetry," the district court was not constrained to considering just substantial assistance factors in "its decision . . . to *limit* the extent of the departure." *Id.* at 430 (emphasis added).

In addition, we "encourage district courts to consider all relevant facts and factors in reaching their decisions" when facing proposed departures for substantial assistance. *United States v. Torres*, 251 F.3d 138, 148 (3d Cir. 2001). And

11

relevant factors are not limited to those that are statutorily enumerated. *Id.* Indeed, we emphasized in *Torres* the need for an "individualized examination," alongside consideration of § 5K1.1 factors, in assessing a defendant's substantial assistance. *Id.* at 147. Thus, in light of *Casiano* and *Torres*, a district court's consideration of § 3553(a) factors unrelated to substantial assistance does not amount to error if these factors do not actually serve as the basis for extending a § 3553(e) departure.

To illustrate this rule in operation, we consider a hypothetical case. In our hypothetical, a statute presents a mandatory minimum of 100 months' imprisonment. Pursuant to a government motion to depart for substantial assistance, the court could decide—based on factors concerning the defendant's assistance alone—that an appropriate sentence is 50 months' imprisonment. The court could then permissibly decide that the § 3553(a) factors warrant an increase of this sentence to 70 months' imprisonment. It could not decide, however, that the § 3553(a) factors warrant a further reduction to a sentence of 30 months' imprisonment.

Here, it was not clear at the time of sentencing whether the District Court invoked the § 3553(a) factors to further extend the downward departure or, conversely, to limit the departure it decided to grant at the closed hearing. The former is forbidden by *Winebarger*; the latter is permitted by *Casiano*. At the open hearing, the District Court did not reference the mandatory minimum sentence or M.M.'s cooperation with the Government. However, the District Court stated it had "chosen to vary below the guideline range due to holistic consideration of Mr. [M.M.]'s background and mental health and substance abuse issues, his relative lack of a criminal history, and the relatively minor amount of heroin and fentanyl involved in the

12

instant offense." J.A. 67. Yet the District Court had already indicated during the closed hearing that it would grant a downward departure for substantial assistance. No party contends that the District Court, in exercising its discretion, could not reduce M.M.'s term to 120 months based solely on his cooperation with the Government. Without knowing how much the District Court initially planned to depart on this basis, it is impossible to determine from the sentencing record alone whether the District Court in fact relied on § 3553(a) factors to extend the downward departure.

Nonetheless, in the District Court's own view, it committed clear error at sentencing. In granting the Government's Rule 35(a) motion to correct the sentence, the District Court concluded that the sentence resulted from clear error because it had "premised the reduction on" the application of § 3553(a) factors to M.M. J.A. 154–55.

The Government asks us to consider the District Court's "admission of clear error" to be the end of the matter. Appellee's Br. 26–27 (internal quotation omitted). By the Government's logic, clear error occurred at sentencing because the District Court expressly said so in its Rule 35 order. However, we are not bound by the District Court's assessment of what constitutes clear error. *See Bennett*, 423 F.3d at 274. Here, our understanding that *Winebarger* error affected M.M.'s original sentence arises from the District Court's subsequent interpretation of its own sentencing. After all, as noted above, we do not perceive error from the record at sentencing. If our ability to detect error in this case depends entirely on the District Court's *post hoc* clarification, then such error could hardly be clear. Therefore, even accepting the District Court's characterization of its own sentencing as being in breach of *Winebarger*, it could not use Rule 35(a) to correct the sentence.

13

In any event, the type of error that occurred here simply does not fit the parameters of Rule 35(a). The Government argues the District Court applied the wrong legal standard, yet the alleged error is not a technical, arithmetical, or even clerical mistake. Rather, it is the sort of issue best addressed on direct appeal, not in a motion with a fourteen-day window. The procedural history of this case does not reveal error that could be easily identified or readily ascertained from the sentencing record. We are also not confronted with an illegal sentence as the original 120-month term still fell within the District Court's discretion. Without more, we cannot hold that any admitted *Winebarger* error in this case constitutes "other clear error." Rule 35(a)'s exceedingly narrow language simply does not permit the District Court's correction to M.M.'s sentence. Accordingly, the amended sentence was improper.

## III.

For these reasons, we will vacate the revised 180-month sentence and remand with instructions for the District Court to reinstate the original 120-month sentence.